**Lawrence M. BRANDT, Petitioner,**

v.

**Raymond T. PERCICH, Sheriff of the City of St. Louis, Respondent.**

**No. 35704.**

Missouri Court of Appeals,
St. Louis District,
En Banc.

March 19, 1974.

Charles M. M. Shepherd, Shepherd & Weenick, Clayton, for petitioner.

J. Brendan Ryan, Circuit Atty., Patrick J. Hitpas, Asst. Circuit Atty., St. Louis, A. Robert Belscher, St. Louis, for respondent.

SIMEONE, Judge.

On May 21, 1971, petitioner Larry Martin Brandt was charged by information in

the Circuit Court with having unlawfully and feloniously in his possession on April 20, 1971 a certain quantity of marijuana. In June, a motion to suppress evidence was filed which was later denied on June 23, 1971. Thereafter on July 12, 1971, by "yellow memorandum" the State elected to "proceed on the misdemeanor of conspiracy to violate the narcotic laws of the State of Missouri." This memorandum was signed by Daniel Fischer, Assistant Circuit Attorney. No new or amended information was filed.

On September 16, 1971, petitioner Brandt, a minor, having previously pleaded guilty on July 12, 1971 to conspiracy to violate the narcotic laws of Missouri, was sentenced to six months in the medium security institution. His sentence was suspended and he was placed on probation for a period of two years. The order of probation was signed on September 16, 1971 by petitioner Brandt and was witnessed by Richard F. Osiecki. The order of probation advised him that he was "placed on probation" and that "under the law the Court may at any time revoke or modify any conditions of the probation, and you shall be subject to arrest upon order of the Court." The Conditions of Probation were set forth in the order. Among the conditions was Condition No. 2: "I shall obtain advance permission from my probation and parole officer before leaving the state or the area in which I am living. The probation and parole officer is authorized to determine this area."

On May 22, 1972 a violation report was filed by Richard F. Osiecki, a state probation and parole officer, which stated that Brandt was sentenced to six months and placed on probation for a period of two years after pleading guilty. The report alleged that "Mr. Brandt has violated his conditions of probation by violating condition #2 (New): 'I shall obtain advance permission from my probation officer be-

fore I leave the State or the area in which I am living. The probation officer is authorized to determine this area.'" The report stated that Mr. Osiecki "contacted the Brandt residence by phone in an effort to contact Mr. Brandt in regard to delinquency in reporting to this office. At this time the officer spoke with subject's mother who stated that Larry left home approximately a month ago and she no longer knew of his whereabouts. She states she believed he has left the area and at present does not have any idea where he may be." The report recommended that due to the fact that no verification was made other than the mother of his leaving the area, it is requested that action be delayed until a more intensive investigation of the whereabouts can be made. An arrest order was to be issued if efforts to locate were unsuccessful in thirty days.

On May 30, 1972, the Court having been informed that the petitioner Brandt violated the conditions of probation, ordered, without a hearing and without counsel, probation revoked and ordered the sheriff to take Brandt into custody and transport him to the Medium Security Institution for the purpose of serving his sentence.

A capias warrant was issued by the probation officer, but petitioner was unable to be located until over a year later, August 10, 1973, when he was taken into custody in St. Louis County pursuant to the capias warrant.

On August 21, 1973, counsel for petitioner moved to set aside the revocation, moved the court to hold a hearing and requested bond.[1] The motion stated that the court on May 30, 1972 "without notice or hearing," revoked the order of probation and ordered petitioner to serve his sentence. The motion stated that Brandt is "desirous of having a hearing on the propriety of the prior revocation and then a proper administrative hearing before the

---

1. The motion was entitled "Motion to Set Aside Revocation of Parole, For Hearing and Admission to Bail."

State Probation and Parole Office in accordance with the law before any revocation of his prior parole be entered." Petitioner prayed the court to "set this Motion for hearing and upon such hearing to set aside the prior order of revocation and to order a proper administrative hearing before the State Board of Probation and Parole prior to any further revocation of parole and pending such hearing to admit defendant to bail herein."

On the same date, August 21, 1973, the motion to set aside the revocation of probation was set for hearing on September 21, 1973, and defendant was admitted to bail.

On September 21, 1973, the trial court which placed petitioner on probation held a hearing on revocation. The court found, upon evidence adduced that the "defendant is in violation of Condition No. 2 of Probation Order and the Revocation Order of May 30, 1972, to remain in full effect." Brandt was remanded to the custody of the sheriff to serve his six months sentence, imposed on September 16, 1971.

At the hearing on September 21, 1973, the court stated that the purpose of the hearing "is on the revocation order issued by this court on May 30, 1972. . . ." Counsel for petitioner contended that the matter should be directed to a hearing officer prior to a revocation, but the court said the purpose of the hearing was to determine if there was sufficient reason to revoke the probation.

The court heard testimony from Richard F. Osiecki, the probation officer assigned to Mr. Brandt. He testified that he reported to the court a violation of condition number two—relating to obtaining advance permission from the probation officer before leaving the State or area. He also stated that in July, 1972, a detective reported that he went to the Brandt residence and that his father stated he had not seen his son since January, 1972. He further testified that he had "not had any contact with" Brandt since January, 1972, but that he was supposed to report every three months.

At the conclusion of the hearing the court ordered that "the probation revocation which was ordered on May 30, 1972, remain in effect," and that the defendant be taken into custody to commence serving his sentence.

On September 21, 1973, petitioner filed his writ of habeas corpus in this court, Mo.Const., Art. V, § 4, V.A.M.S., and petitioner was admitted to bail.

In his petition he alleged that he was unlawfully confined pursuant to revocation of probation previously granted; that on May 30, 1972 the court issued an order revoking the probation without hearing and without counsel. He alleged that on August 10, 1973, he was taken into custody. He alleged that at the suggestion of the local probation office he file a motion through counsel to set aside the prior order of revocation and that he be granted a hearing. Such motion was then filed. He further alleged that on September 21, 1973 he appeared pursuant to the motion and that the court after hearing testimony ordered that the revocation order of May 30, 1972 remain in full force and effect. He contends that he was not afforded due process of law in that he was "not aforded [sic] a preliminary or a final hearing before a court or an administrative officer prior to the revocation of his probation herein" and that he "has not had the benefit of counsel nor an evidentiary hearing at which he could produce evidence relative to the matter. . . ." He contends that Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) requires (1) a preliminary hearing to determine "whether there is probably [sic] cause to believe that he has violated his probation, (2) a final hearing prior to the ultimate decision as to whether his probation should be revoked," and (3) he is entitled to be provided with counsel.

Petitioner makes many contentions in his suggestions:

(1) There is no legal cause for the continuation of petitioner's restraint because (a) the trial court did not have jurisdiction, (b) the trial court was not a court of competent jurisdiction, (c) the time which petitioner may be detained has expired, and (d) the court exceeded its jurisdiction as to matters on May 30, 1972 and September 21, 1973.

(2) The action of the circuit attorney on July 12, 1971 in electing to proceed on conspiracy to violate the narcotic laws, a misdemeanor, is a nullity because no new or amended information was filed, but only a memorandum was so filed.

(3) The order of probation signed by petitioner was a mere voluntary act since no signature of the Judge appears thereon, although there is a place provided therefor. Hence, he argues, petitioner is free of specific conditions of probation and is a condition-free probationer, so that he cannot be in violation of condition no. 2; that such conditions, arguendo, have no legal force and that he was a minor and could not contract with the court on probation conditions.

(4) That § 549.101, RSMo., V.A.M.S. which authorizes the court to revoke probation without a hearing or notice violates due process of law.[2]

(5) That petitioner's initiating motion of August, 1973 sought a hearing on the "property" [propriety?] of the May 30, 1972 order of revocation and the ordering of an administrative hearing, but in lieu thereof the court held a revocation hearing. Counsel for petitioner contends that he believed the hearing would be on his motion rather than an evidentiary hearing on probation revocation and that this was a surprise to him.

(6) The order of revocation in September, 1973 was devoid of proper evidentiary

support. Hearsay evidence was introduced to show that petitioner had violated condition No. 2; since petitioner was present at the hearing he could not be in violation of the condition and there was no competent evidence to have been in breach of the condition of "non-departure from the state or from the area of St. Louis—St. Louis County."

(7) Petitioner is denied due process of law because he was not granted a preliminary or final hearing, with notice of the alleged violations, with opportunity to appear and present evidence and to confront witnesses, before an "independent decision maker" or a "neutral and detached officer" and because he was not afforded a written report of the hearing or a written statement of the evidence relied on and the reasons for revocation.

(8) The court consulted with the probation officer and assistant circuit attorney outside the presence of petitioner or his counsel.

Petitioner summarized his contentions as follows:

1. No valid information charging a conspiracy to violate the laws was ever filed, hence the proceedings subsequent thereto are a nullity;

2. No conditions were ever imposed upon petitioner by the court under the authority of § 549.071, so that he was a condition-free probationer who could come and go at will, and

3. He has been denied due process of law, because of the use of hearsay information, the jurisdiction of the court expired on September 16, 1973, five days prior to the order of September 21, 1973, and because the proceedings of May, 1972 and September, 1973 did not follow the mandates of Gagnon v. Scarpelli decided May 14, 1973. He contends that *Gagnon*

2. He contends that previous decisions in Missouri, State v. Small, 386 S.W.2d 379 (Mo. 1965) and State v. Phillips, 443 S.W.2d 139 (Mo.1969) contravene Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

and *Morrissey* [Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)] require two hearings; that a court —a judicial tribunal—has no jurisdiction to terminate "probation or parole," that the judge who granted probation is not a neutral and detached officer, and that an administrative agency rather than the court only has the power to revoke probation. "There can be no doubt," he contends, "that it is the intention of the Supreme Court to transfer not only supervision but the question of revocation from the trial court to the administrative side of the State's government."

Respondent contends that *Morrissey* and *Gagnon* are not to be applied retroactively, and since petitioner's probation was revoked on May 30, 1972, before either *Morrissey*, decided on June 29, 1972, or *Gagnon*, decided May 14, 1973, the decisions do not apply, so that petitioner's probation may be revoked without notice or hearing. § 549.101.

Petitioner has made broadside attacks on the proceedings on probation revocation. We deem it unnecessary to respond to each and every one. The crux and heart of the issues presented is whether petitioner was denied due process of law under the United States and Missouri Constitutions.

In a companion case decided this date, Ex Parte Moore v. Stamps, 507 S.W.2d 939, we held that under Morrissey v. Brewer and Gagnon v. Scarpelli, due process of law applies to revocation of probation proceedings and that the process that is due requires that the probationer be afforded a hearing and certain rights before revocation as explained therein. These minimum requirements include written notice of the claimed violations of probation and the date and time of the hearing, disclosure to the probationer of the evidence against him in general terms, opportunity to be heard in person or in a proper case by counsel and to present witnesses or documentary evidence, the right to confront and cross-examine witnesses present, and a written statement by the judicial officer conducting the hearing as to the evidence relied on and the reasons for revoking probation.

While we are convinced that at the time of the revocation of probation in this case in May, 1972,[3] the principles of *Gagnon* and *Morrissey* did not apply, since these decisions are clearly not retroactive, *Morrissey*, supra, State v. Settle, 20 Ariz. App. 283, 512 P.2d 46 (1973), yet since the final revocation hearing was held in September, 1973 and since petitioner was not arrested until August 10, 1973, after the effective date of *Gagnon*, May 14, 1973, the requirements as outlined in Moore, supra, should be followed. In this proceeding these minimum requirements, as outlined above, were not complied with when the revocation was finally made in September, 1973. The record does not reflect that probationer was given notice of the reasons for continuation of revocation in September, 1973, nor does the record reflect that the trial court made written findings as to the evidence relied on and the reasons for revoking probation. For these reasons, following Ex Parte Moore v. Stamps, decided this date, we grant the writ of habeas corpus without prejudice to the institution of revocation proceedings in accordance with the principles and procedures set forth in the companion case of Ex Parte Moore v. Stamps.

Almost all of the petitioner's contentions are adequately answered in the companion case of Ex Parte Moore v. Stamps. Neither *Gagnon* or *Morrissey* was intended to straight-jacket the States into developing an inflexible, ritualistic system of probation revocation. Neither decision was intended as an iron-clad code of criminal procedure. The thrust was to leave the States with flexibility to handle probation revocations. The probation revocation proceedings are clearly not criminal proceedings, and are not part of the

---

3. At that time no notice or hearing was required. § 549.101, RSMo., 1969, V.A.M.S.

criminal prosecution so that the full panoply of rights due a defendant in such a proceeding does not apply to probation revocation. There need not, therefore, be a conviction in a court of competent jurisdiction before probation is revoked. Ex Parte Moore v. Stamps, supra. The evidence need not be beyond a reasonable doubt. Hearsay may form the basis of the revocation proceeding. The decisions of the Supreme Court are clearly not retroactive. The trial court has jurisdiction to hear the revocation proceeding and is a neutral and detached officer for such purpose.

■ The trial court in this instance clearly had the power to revoke the probation in May, 1972, since the probationer had not been in touch with his probation officer since January, 1972 and his mother and father stated that he had left home and they did not know his whereabouts. A probationer cannot, to avoid revocation of his probation, abscond for a period of time and then profit from his failure to report or from his leaving the area until his time on probation has passed and thus contend that the court no longer has jurisdiction. Such is not the law and is not compatible with reason.

■ Counsel for petitioner contends that the motion he filed on August 21, 1973 was for the purpose of having an administrative hearing that the prayer was to set the motion for hearing and to order a proper administrative hearing, but the trial court conducted a revocation hearing so that counsel was "surprised." We do not believe the trial court erred in this respect. The motion was entitled "Motion to Set Aside Revocation of Parole, For Hearing and Admission to Bail." It was reasonable to assume that the hearing was to determine whether probation should be revoked in view of the prior history of the case and the posture of the case as it existed in September, 1973.

■ There is no merit to petitioner's contention that petitioner was a condition-free probationer. He signed the probation conditions, he agreed to them, the fact that he was a minor or the Judge did not sign them is of no major significance. Petitioner's contention would work to the detriment of a minor defendant—if he is incapable of agreeing to conditions of probation, then the minor may never be entitled to probation. Neither do we believe there is any merit in his contention that the trial court met with the probation officer or the assistant circuit attorney. The issue is whether the petitioner was given due process under the principles of the Supreme Court decisions.

The revocation of probation on September 21, 1973, continuing in effect the order of May 30, 1972, was based on a violation of Condition No. 2—failure to obtain advance permission from the probation officer before leaving the State or area in which he was living. The probation officer testified that he had not been in contact with petitioner since January, 1972, and that he was required to report every three months. The revocation was not, as petitioner contends, based merely on the fact that the petitioner allegedly left the state or the area.

■ His contention that the action of the circuit attorney in electing to proceed on conspiracy to violate the "narcotics" laws without filing a new or amended information is also without merit. While we do not approve of the practice of proceeding by a written memorandum, and while we believe a new or amended information should be filed in the interests of an orderly process, we cannot say in this instance the petitioner was prejudiced in any way. The punishment for possession of marijuana had been reduced by the General Assembly from a felony to a misdemeanor in 1971, but the act had not as yet taken effect when petitioner pleaded guilty. It was to his advantage that the offense had been reduced to comport to the new controlled

**958**

substances law which reduced the offense of possession to a misdemeanor rather than a felony, subjecting the petitioner to a possible twenty year imprisonment. Furthermore, petitioner pleaded guilty to the reduced charge and thus could be said to waive such a defect.

Under all the circumstances of this proceeding, we believe that justice will be served, and the constitution of the United States adhered to by granting the writ. We believe that § 549.101 insofar as it provides for revocation of probation without notice and hearing is incompatible with Gagnon v. Scarpelli, supra. We hold that under the peculiar facts of this proceeding that the petitioner was not granted the minimum requirements of due process as laid down by Gagnon v. Scarpelli, supra, in that he was not given the process due on final revocation hearing in September, 1973, including written notice of the claimed violations, disclosure of evidence, and a written statement of the judicial officer conducting the hearing as to the evidence relied on and the reasons for revoking probation.

We believe that in the future, the guidelines as outlined in *Moore,* supra, which we believe to be in accord with *Gagnon,* supra should be followed.

The petitioner is therefore discharged from custody and restored to his status as a probationer, without prejudice to the institution of revocation proceedngs in accordance with the principles and procedures set forth in Ex Parte Moore v. Stamps, 507 S.W.2d 939, decided this date and as set forth herein. Rule 91.54, V.A. M.R.

DOWD, C. J., and SMITH, CLEMENS, WEIER, McMILLIAN and GUNN, JJ., concur.

KELLY, J., concurs in result.