**Ex parte Michael J. MOORE, Petitioner,**

v.

**Lynman STAMPS, Warden, St. Louis Medium Security Institution, Respondent.**

No. 35860.

Missouri Court of Appeals,
St. Louis District,
En Banc.

March 19, 1974.

Motion to Modify Opinion Denied
April 8, 1974.

G. Jeffrey Lockett, Asst. Public Defender, St. Louis, for petitioner.

Edward M. Peek, Asst. City Counselor, John T. White, Asst. Circuit Atty., St. Louis, for respondent.

SIMEONE, Judge.

Petitioner, Michael Joseph Moore filed his petition for an original writ of habeas corpus on December 4, 1973, having been given leave to do so as a poor person. Mo.Const., Art. V., § 4, V.A.M.S.

On January 16, 1973, petitioner Moore pleaded guilty in the Circuit Court of the City of St. Louis to two offenses—tampering with a motor vehicle and stealing a motor vehicle. On March 16, 1973, having pleaded guilty to these two offenses, he was sentenced by the Circuit Court to two one-year sentences in the "workhouse of the City of St. Louis" to run concurrently. The court suspended execution of the sentences and placed petitioner on probation for two years subject to the rules in the order of probation. The order of probation stated that the application for probation was approved, and in accordance with the authority vested by law, Moore was "placed on probation for such a period of time as required by statute." The probationer was advised in the order that "under the law the Court may at any time revoke or modify any conditions of the probation" and that he "shall be subject to arrest upon order of the Court." Among the conditions of probation signed by Moore on March 16, 1973, were that "I shall obey all laws and ordinances of the United States, State, County or Municipality."

On July 18, 1973, petitioner was arrested in St. Louis County and charged with stealing a motor vehicle. On July 30, 1973, a preliminary hearing was held and petitioner was discharged for failure of the State to prosecute. On August 9, 1973, a probation violation report was filed by Mrs. Patt Pickett, a probation and parole officer. The report stated that Moore was suspected of the commission of a new offense; that on July 18, 1973, a policeman working a roof detail at River Roads Shopping Center observed a person, later believed to be Moore, park and get out of an automobile which was subsequently found to have been stolen. He then walked to another automobile and drove it away. The officer notified the Jennings police department of the situation. Moore was stopped when the second automobile was discovered to be stolen. He was arrested and charged with auto theft. Moore claimed innocence. Mrs. Pickett recommended in the report that "action be delayed pending disposition by the court."

A supplemental violation report was filed on September 7, 1973. This supplemental report indicated that petitioner appeared for the preliminary hearing in St. Louis County, but that the charge was dropped. The report concluded, "It is now recommended that the probation granted Michael Moore be continued."

On September 11, 1973, the trial court below "having heretofore been informed that the defendant Michael Moore has violated the conditions of probation" ordered the probation revoked, and commanded the sheriff to take him into custody to begin serving the sentences previously imposed.

Two weeks later, on September 27, 1973, the trial court rescinded the revocation order of September 11, 1973, and directed the senior supervisor of the office of probation and parole to conduct an administrative hearing into the matters contained in the probation violation report and to furnish the court with a report and recommendations in relation thereto. The order con-

cluded "after the receipt of said report and recommendations the court may take whatever further action it deems necessary."

The preliminary hearing on revocation was held on October 1, 1973, in the office of the State Probation and Parole in St. Louis. Mr. Moore was the only person making an appearance. The report of that hearing dated October 17, 1973 stated that Moore "continues to claim his innocence, and swears that the statement made to Mrs. Pickett on July 18, 1973 was true that he had borrowed the car from an acquaintance." The report reiterated that the charges were dropped due to the failure of the witnesses to appear. The senior district supervisor, Mr. Banks, recommended that the probation granted March 16, 1973, be continued.

Thereafter, on October 18, 1973, the trial judge wrote to Mr. Banks and noted "with alarm" that the only person attending the hearing was the defendant. The court therefore scheduled a hearing for November 1, 1973 to determine whether the petitioner's probation should be revoked.

On that date the hearing was held. It was the position of the trial court that the "so-called administrative hearing is certainly subject to review by the Circuit Court."

At the revocation hearing, the probationer was present and represented by counsel. At the beginning of the hearing, counsel for probationer made several preliminary motions: (1) the court should continue probation on the grounds that "there has been a preliminary revocation hearing held in accordance with the Scarpelli Decision and at that preliminary revocation hearing there was found to be no probable cause to believe that there was any violation of the probationer's probation rules." It was the position of the trial court that the administrative hearing was subject to review by the circuit court "particularly where the hearing really was a sham in the first place." The court thereupon overruled counsel's motion.

(2) Counsel then contended that if the court would call witnesses it would "jeopardize the position [of the court] that Scarpelli requires [of being a neutral and detached officer]."

(3) Counsel contended that since the possibility of revocation rested on a violation of the law in another county, probationer must be accorded the regular criminal trial processes including indictment or information and that the trial court in the City of St. Louis has no jurisdiction to determine whether probationer committed a violation of a statute in another jurisdiction.

The court overruled these preliminary objections and contentions.

Certain witnesses were then called. Officer Ralph T. Shoemake of the Jennings police department testified that on July 18, 1973 he had occasion to see Mr. Moore on the parking lot at River Roads Shopping Center, in the City of Jennings, and that Moore departed from a 1965 Pontiac, and within one or two minutes walked to a 1964 white Buick and drove off. Officer Shoemake was on top of a roof working extra detail. The officer called the radio dispatcher over his radio and gave the license number and a description of the vehicle. He stated that he identified Mr. Moore as the person who drove the vehicle away. The officer had a set of binoculars. Officer Shoemake was cross-examined. He stated that when he saw Mr. Moore subsequently at the police station, Moore was wearing the same clothing as the man he saw from the roof.

Detective Ronald L. Shownes also testified. He was in his automobile and received a call by the security detail that the automobile believed to have been stolen was proceeding from the River Roads Shopping Center. He saw the Buick with the first three digits of the license number and stopped Mr. Moore about two blocks from the shopping center. After placing him under arrest for auto theft, the detective took him to the police department.

Detective Shownes ran a check on the ownership of the Buick and found that the owner was one Albert LaRose. When the detective was questioned as to whether Mr. LaRose stated that it was his automobile, counsel for probationer objected on the ground of hearsay because "the Scarpelli decision clearly states that the probationer has the minimal due process right to confront and cross-examine all witnesses against him. I contend that this hearsay would deprive him of that right." The court overruled this objection, and Detective Shownes testified that Mr. LaRose stated it was his automobile and he and Mrs. LaRose did not give permission to Moore to operate it.

At the time of the hearing on probation revocation, Mr. LaRose was in California.

Mrs. Patt Pickett, the probation officer working with Mr. Moore, testified that she filed the violation report and the supplemental violation report of September 7, 1973. In the supplemental report she requested that probation be continued because the charge of stealing a motor vehicle was dropped. She knew the charge was dropped because of the failure of witnesses to appear.

Counsel again moved to continue probation on the grounds that a prima facie case had not been made which would tend to indicate that he had in fact violated one of the probation rules, and that due process requires the state prove all the elements of the alleged offense with competent evidence. The court overruled the motion and stated that there was "very clear evidence that the defendant has violated his probationary rules. Overwhelming evidence, I might add."

Mrs. Pickett was recalled by probationer's counsel. She further stated that even though Moore had been found guilty of the offense, she believed she would still recommend continuance of probation because he had been willing to accept help, he took a test to further his education and he was willing to work one-to-one with a volun-teer. She stated the chances of his rehabilitation were "fair."

At the conclusion of the hearing, the court ordered the probation granted Moore on March 16, 1973 revoked and the probationer was remanded to the custody of the sheriff to commence serving the sentence.

This habeas proceeding in this court followed. Petitioner makes several points and contentions in this original proceeding: (1) The court which granted probation cannot, consistent with due process, conduct the revocation proceedings nor revoke probation. Under this point he contends that Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 33 L.Ed.2d 656 (1973) does not permit judicial termination of probation, but that revocation of probation must be accomplished by a "neutral and detached" hearing body. "All the language in both decisions [Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and Gagnon] refers to and appears to demand a final revocation hearing conducted by an administrative body. Revocation by judicial proceeding is neither sanctioned nor even suggested." He states, "The judge who granted probation may find it difficult or impossible to be 'neutral and detached' in regard to a probationer who has allegedly or actually violated the judge's trust in him." He contends that § 549.101, RSMo., V.A.M.S. authorizing the judge to revoke probation is unconstitutional. (2) Petitioner's second ground also urged in another point is that where a preliminary hearing is held in a revocation proceeding and no probable cause is found, a final hearing may not be had, and the judge is bound by the findings of the preliminary hearing finding no probable cause. He relies on language in Gagnon that the probationer may elect to have the final hearing and the court may not under these circumstances reject the probation officer's recommendation that probation be continued. (3) Petitioner's third point is closely allied to his first. He contends that the language in Gagnon is "clear and unmistakeable" [sic] that the final revocation

hearing must be heard by a neutral and detached hearing body. Here the trial court disregarded the findings and recommendations of the preliminary hearing officer and ordered a final revocation hearing; the circuit attorney examined the witnesses and the court called certain witnesses and asked certain questions. Hence, he contends *Gagnon* is violated. (4) Petitioner contends that no written statement of the reasons for possible revocation was given petitioner prior to the hearing on revocation. (5) The trial court was without jurisdiction to hear the probation revocation because criminal offenses must be conducted in the county where the offense was committed. § 541.033, RSMo., V.A.M.S. (6) Petitioner contends that due process requires, when a statutory violation is the basis for revocation, there must be a conviction in a court of competent jurisdiction and implicit in this contention, a mere arrest cannot be the basis for a revocation. (7) Lastly, he contends that *Gagnon* clearly requires that petitioner be allowed to confront and cross-examine witnesses and that the admission of the hearsay testimony relating to the ownership of the Buick violated *Gagnon*.

These contentions of petitioner raise substantial and far-reaching issues relating to judicial revocation of probation. The issues raised are of first impression in this state and the cause is of extreme importance as to the procedures and requirements are to be followed in probation revocation.

Principal reliance is placed by petitioner on *Morrissey* and *Gagnon*, supra.

In *Morrissey*, petitioner Morrissey was convicted of false drawing or uttering of checks in 1962. He pleaded guilty and was sentenced to seven years imprisonment. He was paroled by the Iowa Board of Pa-

role from the penitentiary in June, 1968. Seven months later, at the direction of his parole officer, he was arrested as a parole violator and incarcerated in the county jail. One week later the Iowa Board revoked Morrissey's parole and returned him to the penitentiary.

Morrissey contended no hearing of any kind was given prior to the revocation of parole.[1] The parole officer's report on which the Board acted indicated that parole was revoked on the basis of information that he had violated the conditions of parole by buying a car under an assumed name and operating it without permission, giving false information to the police and his insurance company after a minor accident, obtaining credit under an assumed name and failing to report his place of residence to his parole officer. The parole officer recommended that his parole be revoked because of "his continual violating of his parole rules." 408 U.S. at 473, 92 S.Ct. at 2596.

After exhausting state remedies, Morrissey filed habeas corpus in the United States District Court alleging he had been denied due process because the parole had been revoked without a hearing. The State argued that no hearing was required.

The Supreme Court of the United States recognized that parole is an established variation of imprisonment and its purpose is to help individuals reintegrate into society as constructive citizens as soon as they are able without confinement for a full term. Parole subjects individuals to specified conditions which restrict their activity beyond ordinary restrictions on the ordinary citizen. Parole officers are part of the system designed to assist parolees and give them guidance.

The Supreme Court held that constitutional rights do not turn on whether a ben-

1. Morrissey v. Brewer, supra, involved two cases of parole revocation—Morrissey and Booher.

 In its brief in the Supreme Court of the United States, the State in *Morrissey* asserted for the first time that petitioner was in fact

granted hearings to the petition. The State argued that Morrissey was granted a hearing within two weeks after revocation. But since there was nothing in the record to indicate the State's claim, the Court treated the case in the posture and on the record presented.

efit is characterized as a right or a privilege and whether procedural protections are due depends upon the extent to which a person will suffer a grievous loss. While a parolee is released from confinement and has certain freedoms, he is subjected to many restrictions not applicable to other citizens and may have, for a number of years, been living a normal life at the time he is faced with revocation. Therefore, the termination of the liberty of a parolee inflicts a "grievous loss," and it is no longer useful to determine whether parole is a "right" or a "privilege". "By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment." 408 U.S. at 482, 92 S.Ct. at 2601.

The Court held, therefore, that due process is applicable to parole revocation.

Turning to the question of what process is due, the Court, bearing in mind both the interests of the State and the parolee, saw two important stages in the typical parole revocation: (a) some minimal inquiry conducted at or reasonably near the place of the alleged parole violation or arrest as promptly as convenient; such an inquiry is in the nature of a preliminary hearing to determine whether there is probable cause or reasonable grounds to believe that the parolee has committed the acts which would constitute a violation. This hearing should be made by someone other than one directly involved in the case—the supervising officer—the "officer directly involved in making recommendations cannot always have complete objectivity in evaluating them." 408 U.S. at 486, 92 S.Ct. at 2602. He need not be a judicial officer and it is sufficient if an evaluation of reasonable cause is made by someone other than the one who has made the report of parole violations or has recommended revocation. As to the preliminary hearing, the parolee is: (1) to be given notice that a hearing will take place, and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation; (2) the notice should state what parole violations have been alleged; (3) at the hearing the parolee may appear and speak and bring information or individuals who can relate relevant information; (4) the hearing officer shall make a summary of the hearing and determine whether there is probable cause to hold the parolee for the final decision of the parole board on revocation. When this determination is made, it would be sufficient to warrant the parolee's detention and return him to a correctional institution. (b) The second stage of the process is the final revocation hearing, if desired by the parolee, prior to final decision on revocation by the parole authority. This hearing leads to a final evaluation whether the facts warrant revocation. The hearing must be tendered within a reasonable time.

The Court laid down the minimum requirements of due process as follows: "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses . . . (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." 408 U.S. at 489, 92 S.Ct. at 2604.

As we view it, the thrust of *Morrissey* was twofold: (1) due process of law is applicable to parole revocations and (2) certain minimum requirements must be fulfilled in order to satisfy due process. The Court, however, was careful to point out several important points: (1) revocation of parole is not part of the criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations, (2) no code of procedure was being written for the States, (3) the second stage of the parole revocation is not to be equated with a

criminal prosecution in any sense, (4) the process should be flexible enough to consider evidence which would not be admissible in an adversary criminal trial,[2] (5) no thought was given to create an inflexible structure for parole revocation procedures, and (6) the few, basic requirements are applicable only to "future revocations."

The Court remanded the cause to the Court of Appeals for return to the District Court to make findings on the procedures actually followed by the Iowa Parole Board, and if the procedures followed by that Board were found to meet the standards laid down, that would dispose of the due process claims.

*Morrissey* was followed in 1973 by Gagnon v. Scarpelli, supra. There, the respondent Scarpelli pleaded guilty in July, 1965, to a charge of armed robbery in Wisconsin. The trial court sentenced him to 15 years imprisonment, but suspended the execution of sentence and placed him on probation for seven years in the custody of the Wisconsin Department of Public Welfare, an administrative agency. Scarpelli signed an agreement specifying the terms of his probation, a travel permit which allowed him to reside in Illinois under supervision under an interstate compact and an agreement to return. On August 6, 1965, Scarpelli was apprehended by Illinois police who "surprised" him in connection with a burglary. He admitted breaking into the house. Probation was revoked by the Wisconsin Department of Public Welfare in September without a hearing. The grounds for revocation were that he associated with criminals and was involved in and arrested for a burglary, and he was incarcerated in the Wisconsin reformatory to begin serving his 15 year sentence.

Three years later he applied for a writ of habeas corpus in the federal system. The District Court held that revocation of probation without a hearing was a denial of due process. The Court reviewed *Mor-*

*rissey* in which it held that "[e]ven though the revocation of parole is not a part of the criminal prosecution, we held that the loss of liberty entailed is a serious deprivation requiring that the parolee be accorded due process. Specifically, we held that a parolee is entitled to two hearings, one a preliminary hearing at the time of his arrest and detention to determine whether there is probable cause to believe that he has committed a violation of his parole and the other a somewhat more comprehensive hearing prior to the making of the final revocation decision." 411 U.S. at 781–782, 93 S.Ct. at 1759. Probation revocation like parole does result in a loss of liberty. The Supreme Court following *Morrissey* accordingly stated, "we hold that a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in Morrissey v. Brewer, supra." 411 U.S. at 782, 93 S. Ct. at 1760.

The Court in *Scarpelli* also held that *Morrissey* recognized "that the revocation decision has two analytically distinct components: 'The first step . . . involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more conditions of his parole. Only if it is determined that the parolee did violate the conditions does the second question arise: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?' Morrissey v. Brewer, supra, 408 U.S. at 479–480, 92 S.Ct. at 2599." *Gagnon,* supra, 411 U.S. at 784, 93 S.Ct. at 1760. *Morrissey,* it was said in *Gagnon,* "mandated preliminary and final revocation hearings." At the preliminary hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decision maker, and a written report of the hearing.

2. In *Gagnon* it is said "formal procedures and rules of evidence are not employed" in a probation revocation proceeding. 411 U.S. at 789, 93 S.Ct. at 1763.

The final hearing must include very similar elements: " '(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses . . . ; (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.' Morrissey v. Brewer, supra, 408 U.S. at 489, 92 S.Ct. at 2604." *Gagnon*, supra, 411 U.S. at 786, 93 S.Ct. at 1761.

The court concluded that the State is not under a constitutional duty to provide counsel for indigents in all probation or parole revocation cases, and that there is no justification for a new inflexible constitutional rule with respect to the requirement of counsel. "We think, rather, that the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system." 411 U.S. at 790, 93 S.Ct. at 1763.

We have reviewed these decisions at some length in order to determine the validity of petitioner's contentions. We believe that petitioner by his contentions has read much more in the decisions than actually held by the Supreme Court.

There is a fundamental difference between the procedures for revocation in *Morrissey* and *Gagnon* than the procedures for the revocation of judicial probation. *Morrissey* was directed to the proce-

dures for the revocation of administrative parole, where apparently under Iowa's rule, revocation proceeded and the parolee was incarcerated on the "ipse dixit" of the parole officer. *Morrissey*, supra, 408 U.S. at 495, 92 S.Ct. 2593. *Gagnon* did not involve a judicial revocation, but an administrative one by the Wisconsin Department of Public Welfare. Scarpelli was sentenced by a court, placed on probation, but was placed in the custody of the Wisconsin Department which had the power to revoke. In neither decision was the Supreme Court directly dealing with judicial probation and judicial revocation as in Missouri.[3] Neither decision directly dealt with judicial revocation of probation. The ultimate thrust of both decisions was that due process is required in both parole and probation revocations and that certain minimum requirements are to be satisfied to comply with due process. Neither decision was intended to straight-jacket the States into developing an inflexible, ritualistic system of parole or probation revocation. Neither decision was intended as an iron-clad code of criminal procedure, but the thrust was to leave the States some flexibility in their structures for revocation procedures.

Petitioner makes much of the language in *Morrissey* and *Gagnon* that the hearing, both preliminary and final, must be heard by a neutral and detached hearing body, and that the trial court who granted probation is in no position to revoke. Petitioner's contentions in this regard are overbroad. The initial parole or probation officer who is "directly involved" cannot always have complete objectivity. Therefore, another parole or probation officer should conduct the preliminary inquiry. Nothing in either opinion indicates the parole board which granted the parole or the judge who granted probation is not a neu-

---

3. There are different methods and procedures in parole and probation used throughout the United States. A debate presently exists as to the appropriate governmental branch to deal with probation. Those in favor of judicial probation argue that probation would be more responsive to court direction. Some oppose the placement of probation with the judiciary. See National Advisory Commission on Criminal Justice Standards and Goals, Corrections, 311, 313–314 (1973). Our statutes in Missouri give the power to the judiciary to revoke probation. § 549.101, RSMo, 1969, V.A.M.S.

tral and detached body or officer to hear the revocation. In fact, the Supreme Court in *Morrissey* remanded the cause to determine if the *Iowa Parole Board* met the standards laid down in the opinion.

■ The Court granting parole or probation cannot be said to be so involved or so emotionally entwined with the probationer that it cannot be a neutral and detached officer to hear the revocation proceeding. We do not believe that either decision determines that the trial court which granted probation is not a neutral and detached officer to hear the probation revocation, and rule this point against petitioner.

Our statutes give the power to grant and revoke probation to the court. §§ 549.071 and 549.101, RSMo § 549.101 provides: "1. The *court* granting probation or parole may at any time before order of discharge without notice to the defendant order his apprehension by the issuance of a warrant for his arrest and his appearance in court forthwith. . . . The court may in its discretion with or without hearing order the probation or parole revoked and direct that the sentence theretofore imposed be commenced and order execution thereof. . . ."[4] (Emphasis added.)

In all of the decisions revoking probation in other states since *Gagnon*, every court has assumed that the court granting probation is a neutral and detached officer to revoke and has revoked probation. See for example, State v. Marlar, 20 Ariz.App. 191, 511 P.2d 204 (1973); United States v.

Lara, 472 F.2d 128 (9th Cir. 1972); State v. Gerard, 57 Wis.2d 611, 205 N.W.2d 374 (1973); United States v. Allen, 349 F. Supp. 749 (N.D.Calif.1972).[5]

We therefore hold that the court which granted probation may revoke it and that the judge is a neutral and detached officer for such purpose.

Petitioner also contends that a preliminary hearing having been held and no probable cause having been found of a violation of conditions and a recommendation that the petitioner be continued on probation, the trial court is bound by the preliminary hearing and must therefore continue the probation. Nothing in either *Morrissey* or *Gagnon* supports this. The preliminary hearing is a factual determination. The final hearing is a value judgment, a discretionary determination whether probation should or should not be revoked. Unless the Supreme Court has determined that the judiciary—federal and state—is precluded from exercising its traditional function of judicial determination and discretion, the judiciary still retains the power to make the final determination on revocation.

■ Nothing in either decision tends to conclude that a judicial officer is bound by the findings or recommendations of a non-judicial, administrative officer. We must conclude that the judicial officer in determining whether to revoke probation is not bound by the findings and recommendations of the probation officer, and he is

4. The language of the statute giving discretion to revoke "with or without hearing" is not compatible with Gagnon v. Scarpelli, supra. Many states require a hearing before revocation—Alabama, Colorado, Connecticut, Illinois, Indiana, Maryland, Maine, New York, North Dakota, Ohio, South Carolina, and Texas. See Sklar, Law and Practice in Probation and Parole Revocation Hearings, 55 J.Crim.L.C. & P.S. 175 (1964), reprinted in Probation and Parole: Selected Readings, Carter and Wilkins, eds., at 474 (1970).

5. In the federal system the judge who grants probation may revoke. We do not believe that the Supreme Court by *Morrissey* and *Gagnon* intended to declare that the federal statutes were in violation of these decisions. See 18 U.S.C.A. §§ 3651, 3653. Rule 32(f), Federal Rules of Criminal Procedure provides: "The *court* shall not revoke probation except after a hearing at which the defendant shall be present and apprised of the grounds on which such action is proposed. The defendant may be admitted to bail pending such hearing." (Emphasis added.)

duty bound to make his own findings and conclusions.[6]

 Some other contentions made by petitioner are also without merit. (1) The probation revocation is not a criminal proceeding. There need be no conviction in a court of competent jurisdiction before probation is revoked. It is the general principle that a probationer need not be indicted, prosecuted or convicted before probation is revoked. There need not be a record of conviction as contended by petitioner. People v. Johnson, 12 Ill.App.3d 511, 299 N.E.2d 545 (1973); State v. Guisinger, 511 P.2d 416 (Or.App.1973); Barnes v. State, 494 S.W.2d 711 (Ark.1973). (2) The evidence need not be beyond a reasonable doubt. Stone v. Shea, 304 A.2d 647 (N.H. 1973). "The degree of proof necessary for parole or probation revocation is less than that required to sustain a criminal conviction. The hearing judge need only be reasonably satisfied that the terms of the [probation] have been violated. . . ." State v. Wilhite, 492 S.W.2d 397, 399 (Mo.App.1973). (3) Hearsay may form the basis of a revocation proceeding as long as the probationer or counsel may cross-examine the witnesses present. "Formal procedures and rules of evidence are not employed." *Gagnon*, supra, 411 U. S. at 789, 93 S.Ct. at 1763. Petitioner was not being tried in another judicial circuit for a criminal offense; the hearing was to determine whether probation should be revoked. (4) The opinions are not retroactive. *Morrissey*, supra; Wrone v. Anderson, 478 F.2d 291 (10th Cir. 1973); Horstman v. State, 210 N.W.2d 427 (Iowa 1973); State v. Settle, 20 Ariz.App. 283, 512 P.2d 46 (1973).

 While we do not believe that *Morrissey* and *Gagnon* apply strictly to judicial revocation of probation, the spirit of those decisions requires that a probationer, before revocation, be afforded certain rights. Under these decisions of the Supreme Court of the United States, we believe that before judicial probation may be revoked, due process requires the following:

1. The probationer is to be afforded an informal preliminary hearing within a reasonably short period of time after an alleged violation or arrest. This preliminary hearing must be held by a probation or parole officer other than the one assigned to the probationer to determine a wholly retrospective factual question; i. e., whether the probationer has in fact acted in violation of one or more conditions of his probation. The probationer should be given notice that the hearing will take place at a specified date and place and that its purpose is to determine whether there is probable cause to believe that he has committed a probation violation. The notice should also state what probation violations have been alleged. At the hearing he is entitled to appear and speak in his own behalf, and bring documentary evidence or persons who may give relevant information to the hearing officer. He is entitled to a conditional right to confront adverse witnesses. At the conclusion of the hearing, the officer has the duty to make a written report of the hearing and a summary or digest of what transpired, determine whether there is sufficient cause to hold the probationer for a final decision by the court and file a copy of the report with the court. If the officer determines that there is probable cause to hold the probationer, that is sufficient to warrant the probationer's continued detention.[7] If probable cause is not found, that may end the matter. If probable cause is not found, the trial court

---

6. It may well be that the probation officer would recommend revocation. The trial court should not be bound by that recommendation either.

7. § 549.101 provides, " . . . Any probation or parole officer assigned to or serving the court or judge . . . may arrest such defendant without a warrant . . . by giving him a written statement setting forth that the defendant has, in the judgment of the probation officer, violated the conditions of his probation. The written statement delivered with the defendant by the arresting officer

which granted probation is not bound by the determination of the probation officer irrespective of the findings on preliminary hearing, and may hold an independent hearing under the conditions specified, *infra*.

2. Upon a finding of probable cause that conditions have been violated, the trial court which granted probation shall within a reasonable time hold a final hearing to determine whether the probation should be revoked. Upon a finding at the preliminary hearing that there was no probable cause that the conditions have been violated, the trial court which granted probation may, within a reasonably short period, hold a final revocation hearing to determine whether probation should be revoked under the circumstances, taking into consideration the findings and recommendations of the probation officer.

The following minimum requirements of due process must be given prior to and at the final hearing:

(a) Written notice of the claimed violations of probation and the date and time of hearing. (b) Disclosure to the probationer prior to the hearing of evidence against him in general terms. (c) Opportunity to be heard in person or in a proper case by counsel and to present witnesses or docu-mentary evidence. (d) The right to confront and cross-examine adverse witnesses, unless there is good cause for not allowing or having such confrontation. (e) A written statement by the judicial officer conducting the final hearing as to the evidence relied on and the reasons for revoking probation.[8] (f) The probationer may in the exercise of sound discretion be entitled to counsel.

3. We set forth these guidelines[9], not as absolutes, but as satisfying due process of law before judicial probation is revoked. Justice Powell stated in *Gagnon*, "Nor did we intend to foreclose the States from . . . developing other creative solutions to the practical difficulties of *Morrissey* requirements." 411 U.S. at 783, 93 S.Ct. 1760 quoted in State v. Settle, supra. Therefore in lieu of the procedures as outlined in (1) and (2) above, we further hold that where it is practical to do so, one hearing by the court which granted probation will satisfy due process if the hearing is held within a reasonably short period of time after an alleged violation or after an arrest for a violation and the requirements of due process as outlined above for the final hearing are afforded. We believe that the decisions of the Supreme Court require that the probationer must be accorded a hearing before

to the official in charge of a county jail or other place of detention shall be sufficient warrant for the detention of the defendant. . . . "

The purpose of the preliminary hearing is therefore to prevent continued incarceration of the probationer prior to a preliminary hearing being held. See also § 549.265 dealing with the powers of a parole officer to incarcerate.

8. These requirements may not, of course, be applicable to the varied and almost infinite variety of probation revocation proceedings. For example, where there is clear record evidence of a conviction of an offense (by plea or conviction by a jury), this full procedure may not be necessary. In such instance there would be need only for notice of a violation and the right to challenge the documentary evidence.

There may be situations where the probationer has not reported to his probation officer for a long period of time and his whereabouts are unknown. In such instance, the trial court may revoke the probation or if time is about to expire, extend probation and issue arrest order, and when the probationer is finally located, then the procedures outlined above should be followed.

9. See the guidelines set forth in Arizona, State v. Settle, supra.

The proposed criminal code of Missouri, HB 1502, provides that the probationer is entitled to two hearings on revocation of probation. § 559.036(7) provides the probationer shall have a right to a preliminary hearing on the violation charged by a judge and a final hearing by the sentencing court.

he is deprived of his liberty for any period of time other than a reasonably short one or before he suffers a "grievous loss" to determine whether in fact he violated one or more of the conditions of probation and whether that probation should be revoked. Where practical to do so, the judicial hearing may combine both the factual determination and the value-judgment determination of whether probation should be revoked. If this combined hearing is held, a preliminary hearing by a probation officer to determine probable cause is not essential.

This alternative procedure, we believe, would not violate *Gagnon* or *Morrissey*. Although *Gagnon* and *Morrissey* "mandate" two hearings—preliminary and final—those decisions dealt with administrative revocations of parole or probation. We deal here rather with judicial revocation of probation where procedures and processes differ and where a decision is made by the repository of "due process"—the courts.

We turn then to the petitioner's final points and test them against what we believe to be necessary to satisfy the above requirements. Petitioner contends he was not afforded a written statement as to the reasons for revoking probation, and hence was denied due process. There is nothing in the record to indicate that he received a written notice of the probation violations alleged either prior to the preliminary hearing or before the final hearing. The State in argument admitted this was a requirement, but that the record did not reflect such notice. Furthermore, there was no written statement by the trial court as to the evidence relied upon or the reasons for revoking petitioner's probation.

We believe that in the interests of orderly process and, in order to comply with the due process requirements set forth above, petitioner was entitled to such notice and the trial court was required to make written findings and the reasons for revocation.

The petitioner is therefore discharged from imprisonment and restored to his status as a probationer without prejudice to the institution of revocation proceedings in accordance with the principles and procedures set forth herein. Rule 91.54, V.A. M.R.

DOWD, C. J., and SMITH, CLEMENS, WEIER, KELLY, McMILLIAN and GUNN, JJ., concur.