Edward A. OCKEL, V., Petitioner,

v.

Honorable James T. RILEY and Missouri State Board of Probation and Parole, Substitute Parties for Melvin Twiehaus, Respondents.

No. 59249.

Supreme Court of Missouri, En Banc.

Sept. 13, 1976.

Rehearing Denied Oct. 12, 1976.

William R. Dorsey, Dorsey & Dorsey, Clayton, for petitioner.

Paul R. Otto, Asst. Atty. Gen., Jefferson City, for respondents.

BARDGETT, Judge.

Edward A. Ockel, V., filed an original petition for writ of habeas corpus in this court naming the sheriff of Warren county as respondent and seeking an order discharging him from probation on the grounds that the circuit judge of Cole county continued his probation for two years beyond April 17, 1975, the expiration date of the original period of probation, without prior notice and hearing. It is petitioner's contention that due process of law requires notice and hearing prior to an order continuing a person on probation, and that because he was not afforded notice and hearing prior to the expiration of his original term he was automatically discharged from probation by operation of law under section 549.111(1), RSMo 1969.

The writ issued and respondent filed his return asserting he, sheriff of Warren county, was holding petitioner in detention by virtue of a probation violation warrant issued September 22, 1975, pending a hearing to determine whether the probation granted April 18, 1972 (original term) should be revoked.

Petitioner filed an answer in which he admitted being detained but denied the detention was lawful asserting he had been discharged from probation by operation of law on April 17, 1975.

On November 13, 1975, petitioner moved to substitute the circuit judge and the state board of probation and parole of Cole county as respondents because petitioner had been released from the custody of the Warren county sheriff, but petitioner was still being maintained on probation by order of the circuit judge of Cole county under the supervision of the board of probation and parole. The motion was sustained and the parties ordered substituted.

Respondent circuit judge then filed a "Motion for leave to amend Response [return] to writ of Habeas Corpus" together with his amended return. Leave to amend response was granted December 22, 1975, and petitioner was ordered to file answer to amended response. Petitioner filed "Denial of Amended Return in Habeas Corpus" on December 30, 1975, and the cause has been briefed and argued.

"In a habeas corpus proceeding, the petition for the writ is merely a preliminary pleading which, upon the issuance of the writ, has fully served its purpose and drops out of the case when the return thereto is made. *State ex rel. Burtrum v. Smith,* 357 Mo. 134, 206 S.W.2d 558, 561[1] (banc 1948). The return becomes the principal pleading which the petitioner can traverse only by reply. Thus, since the return is responsive to the writ, and not the petition, the issues in habeas corpus are, in the ordinary manner, framed not by the petition but by the return and the traverse by way of reply. *Thompson v. Sanders,* 334 Mo. 1100, 70 S.W.2d 1051, 1052[1] (banc 1934). If the petitioner fails to join issue on the return, the facts alleged therein are taken as conclusive and true, and the only question which remains is whether, under such facts, the restraint is authorized as a matter of law. *Ex parte Thornberry,* 300 Mo. 661, 254

S.W. 1087, 1089[3] (banc 1923)." *Ryan v. Wyrick*, 518 S.W.2d 89, 91 (Mo.App.1974).

In this case the amended return alleges the plea of guilty before respondent on April 18, 1972; that respondent suspended imposition of sentence and placed petitioner on probation for three years; that petitioner returned to and continued to reside in Warren county, Missouri, and was under supervision of the Missouri state board of probation and parole; that petitioner exhibited irresponsibility toward the technical conditions of probation; that in July 1972 he left the state without permission; that petitioner was notified that this was a violation of probation; that petitioner missed several appointments with his parole officer; that on November 28, 1973, petitioner was arrested for speeding and driving while intoxicated and on September 6, 1974, was convicted of both offenses and fined $250 on the speeding charge. It alleged that on February 6, 1975, a probation violation warrant was issued for his arrest which alleged that he had violated that condition of probation which required obedience to the laws; that on February 9, 1975, petitioner was arrested and incarcerated by the sheriff of Warren county; that on February 10, 1975, petitioner was interviewed by his probation officer and discussed certain alleged violations of probation and admitted he had assaulted a named individual in a domestic dispute; that he made trips to the state of Nevada without permission and that he kept a gun at his bar. On February 10, 1975, the probation violation warrant was withdrawn.

The amended return further alleged that prior to February 24, 1975, petitioner's probation officer fully informed petitioner that she (probation officer) was applying to the circuit judge to extend petitioner's probation and her reasons therefor; that on February 24, 1975, respondent judge extended the probation for two years and on February 28, 1975, petitioner was notified by letter of the extension.

Petitioner in his pleading entitled, "Denial of Amended Return in Habeas Corpus", admits he is in custody of the state board of probation and parole but denies that the "custody" is legal on the ground that he was automatically discharged from probation on April 17, 1975.

The original term of probation ended April 17, 1975. Petitioner admits in his brief of receiving a letter from his probation officer on or about March 1, 1975, which stated that his probation had been extended from April 17, 1975, for a period of two years until April 17, 1977.

The petitioner did not deny the factual allegations of respondent's amended response and therefore those allegations will be taken as true. *Ryan v. Wyrick*, supra, 518 S.W.2d at 91.

The incident that triggered the instant petition for writ of habeas corpus was the act of the sheriff of Warren county in taking petitioner into custody on September 23, 1975, under a probation violation warrant. On or about October 6, 1975, an administrative hearing was held by a probation and parole officer to determine probable cause as to the charges of probation violation. The hearing officer filed his report with respondent on October 29, 1975, and on October 31, 1975, respondent ordered petitioner released from confinement. This order left petitioner on probation under the supervision of the state board of probation and parole.

The Missouri statutes with reference to judicial probation and parole are as follows:

Section 549.061, RSMo 1969, as amended 1975, provides:

"The circuit and criminal courts of this state, and the court of criminal correction of the city of St. Louis and boards of parole created to serve any court have power, as herein provided, to place on probation or to parole persons convicted of any offense over which they have jurisdiction; except as otherwise provided in section 195.200, RSMo, and sections 559.011 and 559.013."

Section 549.071, RSMo 1969, provides:

"1. When any person of previous good character is convicted of any crime and commitment to the state department of corrections or other confinement or fine is

assessed as the punishment therefor, the court before whom the conviction was had, if satisfied that the defendant, if permitted to go at large, would not again violate the law, may in its discretion, by order of record, suspend the imposition of sentence or may pronounce sentence and suspend the execution thereof and may also place the defendant on probation upon such conditions as the court sees fit to impose. The probation shall be for a specific term which shall be stipulated in the order of record. In the case of a felony offense no probation under this chapter shall be granted for a term of less than one year, and no probation shall be granted for a term of longer than five years. In the case of a misdemeanor offense no probation shall be granted for a term of longer than two years. The court may extend the term of the probation, but no more than one extension of any probation may be ordered.

"2. The courts, subject to the restrictions herein provided, may, in their discretion, when satisfied that any person against whom a fine has been assessed or a jail sentence imposed, will, if permitted to go at large, not again violate the law, parole the defendant upon such conditions as the court sees fit to impose."

Section 549.101(1), RSMo 1969, provides:

"The court granting probation or parole may at any time before order of discharge without notice to the defendant order his apprehension by the issuance of a warrant for his arrest and his appearance in court forthwith. Any probation or parole officer assigned to or serving the court or judge having jurisdiction may arrest such defendant without a warrant, or may deputize any other officer with power of arrest to do so by giving him a written statement setting forth that the defendant has, in the judgment of the probation officer, violated the conditions of his probation. The written statement delivered with the defendant by the arresting officer to the official in charge of a county jail or other place of detention shall be sufficient warrant for the detention of the defendant. After making an arrest the probation officer shall present

to the detaining authorities a similar statement of the circumstances of violation. The court may in its discretion with or without hearing, order the probation or parole revoked and direct that the sentence theretofore imposed be commenced and order execution thereof or in the event imposition of sentence was suspended the court may pronounce sentence and order execution thereof. The court may in its discretion, order the continuance of the probation or parole upon such conditions as the court may prescribe. The court in its discretion may order the allowance in mitigation of the sentence credit for all or for part of the time the defendant was upon probation or parole."

Section 549.111(1), RSMo 1969, provides:

"When a defendant who has been placed upon probation or parole for the term prescribed by the court, and the court granting the probation or parole is satisfied that the reformation of the defendant is complete and that he will not again violate the law, the court shall, by order of record, grant his absolute discharge. When a defendant has completed the term of probation prescribed by the court, if the original order of probation has not been amended, modified, extended or revoked by the court, he shall automatically be absolutely discharged from the probation and from the supervision of the board of probation and parole and the court shall so note by order of record. The order operates as a complete satisfaction of the original judgment by which the fine or jail sentence or commitment to the state department of corrections was imposed or suspended."

Section 549.141, RSMo 1969, provides:

"The action of any court in granting, denying, revoking, altering, extending or terminating any order placing a defendant upon probation or parole is not subject to review by any appellate court."

■ The statutes noted supra place wide discretion in the trial judge with respect to all aspects of judicial probation. It must be noted at the outset, however, that the provisions of the Missouri statutes

which allow for revocation of probation or parole and consequent imprisonment without notice and hearing are violative of the procedural due process requirements of the Fourteenth Amendment of the United States Constitution. *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Moore v. Stamps,* 507 S.W.2d 939 (Mo.App.1974); *Brandt v. Percich,* 507 S.W.2d 951 (Mo.App. 1974). Earlier Missouri cases held that under section 549.101, *supra,* a probationer was not entitled to a hearing on revocation of probation. *State v. Phillips,* 443 S.W.2d 139 (Mo.1969); *State v. Small,* 386 S.W.2d 379 (Mo.1965); but, as noted supra, those rulings have been superseded by *Morrissey* and *Gagnon.* Implicit in this court's holding in the earlier cases that the statutes of Missouri do not require notice and hearing on probation revocation is the holding that notice and hearing are not required by statute with respect to the extension or continuation of probation—that the trial court may, with or without a hearing, extend the probation.

Petitioner does not claim the right to notice and hearing on the grounds that the Missouri statute so requires but proceeds on the basis that the statute authorized the judge to order continuation or extension of probation with or *without* notice and hearing. With this as a base, petitioner contends that due process of law and fundamental fairness requires that notice and hearing be afforded prior to a continuation of probation.

Therefore the question to be decided is whether section 549.101, RSMo 1969, which permits a judge to continue or extend the period of probation *without* a hearing is unconstitutional as violative of a probationer's right to the procedural due process required by Amendment Fourteen of the U.S. Constitution and Art. I, sec. 10, Mo. Const.

There are no United States Supreme Court cases nor cases of this court directly in point.

The briefs of the parties and our research reveal only a few cases in which the question of whether there must be notice and hearing prior to continuation of probation was at issue.

In *United States v. Freeman,* 160 F.Supp. 532 (D.D.C.1957), the petitioner sought an order from the U.S. district court judge vacating a probation revocation. After having pleaded guilty to an offense in U.S. district court, Freeman received a suspended sentence and was placed on probation for three years. Just prior to the expiration of the three-year period, the probation officer reported the impending expiration to the court with a statement of conduct of the probationer as required by statute. The court considered the report and entered an ex parte order extending the probation for an additional two years expiring February 27, 1957. On February 4, 1957, the probation officer reported to the court that Freeman had violated the terms of probation. The court issued a bench warrant for Freeman and extended probation for one more year solely for the purpose of enabling the court to revoke the probation during the probationary period. On March 1, 1957, Freeman appeared before the court and for good cause shown his probation was revoked.

The legal issue in *Freeman* was whether the court may extend a period of probation ex parte. The court noted that the District of Columbia's statute did not specifically require a hearing either at the time of extension or of revocation and that under *Escoe v. Zerbst,* 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1935), probationers have no constitutional right to a hearing even at the time of revocation. The court held that the right to hearing on revocation or extension stems from the probation statute, not the constitution. The U.S. district court judge in *Freeman* denied the motion to vacate the probation revocation order but announced that he considered ex parte extensions generally to be an unwise practice and, therefore, in the future he would require the appearance of probationer with counsel before extending such periods, with certain

exceptions. *Freeman* was affirmed on other grounds, *Freeman v. United States,* 103 U.S.App.D.C. 15, 254 F.2d 352 (1958).

The Missouri statute, section 549.101(1), provides that Missouri judges may continue probation with or without a hearing so they are free to do as the U.S. district court judge in *Freeman* declared would be his practice in the future.

In *Cook v. Commonwealth,* 211 Va. 290, 176 S.E.2d 815 (1970), the trial judge sentenced Cook to three years in the penitentiary, suspended two years of that sentence, and directed that he serve twelve months at a correctional farm in lieu of one year in the penitentiary, and ordered that upon his release from the correctional farm Cook would be on probation for three years from July 27, 1965. On July 26, 1968, the trial court was advised by a probation officer that Cook was in jail in another county charged with forgery. The court entered an ex parte order extending the probation period for one year or until July 27, 1969. Cook received no notice of the proposed action and was not present when the order was entered. Subsequently, on September 6, 1968, the court held a revocation hearing with Cook present and represented by counsel. It was established that Cook had pleaded guilty to two felonies of check forgery. The court then revoked probation and ordered the remainder of the original three-year sentence (two years) be executed.

Cook contended the ex parte extension of probation was invalid because he had no notice or hearing. The Virginia Supreme Court noted that the Virginia statutes merely provided that, "The court may subsequently increase or decrease the probation period and may revoke or modify any condition of probation", (Va.Code sec. 53–273), and that no procedure to be followed was set forth in the statute. The court looked to other provisions of the Virginia probation laws and noted that while the revocation provisions did not require a hearing upon the revocation of a suspended sentence, the Virginia Supreme Court had previously held in *Slayton v. Commonwealth,* 185 Va. 357, 38 S.E.2d 479 (1946), that fundamental fairness required a judicial hearing of a summary nature before the court could revoke a suspended sentence and thereby deprive the probationer of his liberty. The court said it had held, in effect, that the requirement of such a hearing was implicit in the statute.

Using the same rationale (that a hearing is implicit in the statute), the court held that a judicial hearing of a summary nature was required because increasing the period of probation has the effect of extending the restraints on the probationer's liberty and extends the time period during which revocation may occur. The court held the ex parte order continuing Cook on probation to be invalid; that the original probationary period expired July 27, 1968, and therefore the court was without power to revoke probation after the original probation expired.

The Virginia court did not hold that constitutional due process required a hearing on extension of probation. It did hold that it was implicit in the Virginia statutes that such a hearing was required.

*Morrissey v. Brewer, supra,* and *Gagnon v. Scarpelli, supra,* held respectively that a hearing was required on revocation of parole and revocation of probation as part of procedural due process under the Fourteenth Amendment to the United States Constitution. In *Gagnon,* 411 U.S. at 782, footnote 4, 93 S.Ct. at 1760, the court said that after *Morrissey v. Brewer,* a probationer can no longer be denied due process "in reliance on the dictum in *Escoe v. Zerbst,* 295 U.S. 490, 492, 55 S.Ct. 818, 819, 79 L.Ed. 1566 (1935), that probation is an 'act of grace'." Although *Escoe v. Zerbst, supra,* was not specifically overruled in *Morrissey* or *Gagnon,* it is obvious that *Escoe* cannot be followed when revocation is involved.

In *Morrissey* the court said, 408 U.S. at 481, 92 S.Ct. at 2600: "Whether any procedural protections are due depends on the

extent to which an individual will be 'condemned to suffer grievous loss.'" In analyzing the relative situations of persons completely free, free on parole, and those in confinement, the court said, 408 U.S. at 481–482, 92 S.Ct. at 2600:

"We turn to an examination of the nature of the interest of the parolee in his continued liberty. The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. He may have been on parole for a number of years and may be living a relatively normal life at the time he is faced with revocation. The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions. In many cases, the parolee faces lengthy incarceration if his parole is revoked.

"We see, therefore, that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others. It is hardly useful any longer to try to deal with this problem in terms of whether the parolee's liberty is a 'right' or a 'privilege.' By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal."

The "grievous loss" found by the United States Supreme Court to be sustained by revocation is, of course, the total loss of liberty occasioned by imprisonment. The court acknowledged that conditions of parole restrict the activities of parolees substantially beyond restrictions imposed by law on an individual citizen. And it is obvious that conditions of probation or parole that limit a parolee's right to travel where he pleases, prohibit the use of liquor, or require him to receive permission from his probation officer before engaging in specified activities which others may legally engage in, do place restrictions on the liberty of a parolee that are substantial.

The issue here, however, is not whether conditions of probation substantially restrict the full exercise of rights of free men but whether the *continuation* or *extension* of probation constitutes such a grievous loss so as to constitutionally require prior notice and hearing. That issue was decided in *Skipworth v. United States,* 508 F.2d 598 (3d Cir. 1975), subsequent to *Morrissey* and *Gagnon.* In *Skipworth* the prisoner appealed from denial of his pro se application to vacate two five-year sentences which were imposed after revocation of probation. On April 1, 1969, the U.S. district court judge suspended imposition of sentence and placed Skipworth on probation for two years. On March 25, 1971, five days prior to the expiration of the two-year period, the judge, ex parte, ordered an extension of one year on the recommendation of the probation officer. The basis for the recommendation was that Skipworth had been arrested on seven occasions by the Philadelphia police on narcotics violations. As of the time the recommendation was made, Skipworth had been adjudged not guilty or the charges had been dismissed as to four of the seven arrests. The other three charges were pending but were not scheduled for further court action until April 19, 1971, which was after the original probationary period would have expired. Thereafter, in December 1971, he was arrested for violation of probationary terms and following a hearing on January 7, 1972, probation was revoked and Skipworth was sentenced to two consecutive five-year terms. Skip-

worth contended the one-year ex parte extension was invalid and therefore the subsequent revocation and sentencing were likewise invalid. The court of appeals stated the issue was whether the due process clause requires that a probationer be given notice and a right to a hearing before any order granting an extension of probation is entered. That, of course, is the issue in the instant case.

In *Skipworth* the court noted that the law had changed considerably since the district court's decision in *Freeman, supra,* and that *Escoe v. Zerbst, supra,* which the *Freeman* court relied on, had since been repudiated in *Gagnon,* and that the test enunciated in *Morrissey* and followed in *Gagnon* was " '[w]hether any procedural protections are due depends on the extent to which an individual will be "condemned to suffer grievous loss".' *Morrissey, supra,* 408 U.S. at 481, 92 S.Ct. [2593] at 2600." *Skipworth,* 508 F.2d at 601. Applying the foregoing test to the ex parte extension of probation, the court in *Skipworth* went on to say, 508 F.2d at 601–602:

"After careful consideration of the principles set forth in *Morrissey* and *Gagnon* and their applicability to this case, we do not believe that due process required notice and a hearing prior to the extension of the petitioner's probation. While we acknowledge that probation entails significant restrictions on an individual, an extension of probation is clearly not as 'grievous' a 'loss' as revocation, and here it entailed no greater restrictions than those which existed previously. In fact, the primary 'loss' suffered by an individual whose probation has been extended lies not in the continuing restrictions themselves, but in the possibility of future revocation. While such a loss is indeed serious, it is merely potential at the time of extension, and the due process clause clearly provides the protection of a hearing in the event that revocation proceedings should subsequently occur. We add that the petitioner in fact received a revocation hearing at which he was represented by counsel.

"We also note that the kind of factual inquiry in an extension proceeding is quite different from that in a revocation proceeding. In revocation proceedings, the trial judge must reasonable satisfy himself that the probationer has broken some law while on probation or has otherwise violated a condition of his probation. While the judge has considerable discretion as to whether to order revocation, he must at a minimum make an initial factual finding of a probation violation. A revocation hearing, therefore, provides the probationer with the crucial opportunity to contest an allegation of violation.

"In granting an extension, however, the trial judge is given greater latitude, and he need not find that any probation violation has occurred. For example, in *United States v. Squillante,* 144 F.Supp. 494, 497 (S.D.N.Y.1956), the court refused to terminate the probation which it had previously extended, despite finding that the probationer had complied with the express condition of his probation, because it believed that 'the best interest of society warrants the continuation of supervision over the probationer.' See also *United States. v. Rosner,* 161 F.Supp. 234 (S.D.N.Y.1958); *United States v. Squillante,* 137 F.Supp. 553 (S.D.N.Y.), aff'd, 235 F.2d 46 (2d Cir. 1956); *United States v. Edminston,* 69 F.Supp. 382, 384 (W.D.La.1947)."

The court concluded in *Skipworth* that an ex parte extension of probation was not so prejudicial as to constitute a violation of due process and affirmed the district court even though the opinion stated that because of the potential for prejudice the district courts in the third circuit would thereafter be required to give notice to the probationer of the proposed extension and afford him a hearing should he so desire.

One other case has been brought to our attention involving the issue of a hearing prior to extension of probation which is *Warden Nevada State Prison v. Gaines,* 522 P.2d 1009 (Nev.1974). There, probation had been granted on condition Gaines make res-

543 of the United States Constitution, and of Art. I,

titution of money he embezzled. Two weeks before his probation was to expire, the trial court, pursuant to a request of the probation department, extended the probationary period to the full five-year statutory limit or until restitution was made. The basis for the probation officer's recommendation was that Gaines had failed to make restitution. This order was entered wholly ex parte. After another year went by, Gaines' probation was revoked for leaving Nevada without permission and he was incarcerated in prison. Gaines then filed a petition for writ of habeas corpus contending that the order extending probation was invalid.

Certain Nevada statutes provide that a probationer who has failed to make restitution as ordered without a showing of economic hardship shall be given a general discharge (from probation) except that a civil liability remains for any unpaid restitution. The statute applies to probationers whose terms have expired, but the Nevada court held it applicable to Gaines because his probation period had only two weeks remaining when it was extended. The court held that Gaines was entitled to a hearing with reference to whether economic hardship was the reason for not making restitution and said that the facts suggested that he came within that part of the statute reducing the restitution to a civil liability. The court held the extension invalid and affirmed the lower court's order releasing the prisoner.

Although the Nevada court cited *Gagnon* and *Morrissey* in support of its decision, it appears that the hearing that the court held Gaines to be entitled to was a hearing required under the statute which specifically dealt with restitution and was not on the basis that constitutional due process mandated a hearing prior to the extension order.

■ We have considered all of the decisions touching upon the point in issue here that have been located. No prior decision has held that due process of law under a state constitution or under the Fourteenth Amendment of the United States Constitution requires notice and hearing prior to an order extending the period of probation. The discretion vested in a judge with reference to granting probation and extending the term within statutory limits is exceedingly broad and is not subject to review by any appellate court. The reasoning found in the *Skipworth* decision supporting the holding that extension of probation does not constitute such a grievous loss so as to constitutionally require prior notice and hearing is sound.

■ The court holds that the due process clause of the Fourteenth Amendment of the United States Constitution, and of Art. I, sec. 10, Mo.Const., does not require notice and hearing prior to an order extending the term of probation and that section 549.101, RSMo 1969, is not unconstitutional in allowing probation to be extended without a prior hearing.

The court declines to exercise its general superintending control authority under Art. V, sec. 4, Mo.Const., as amended, so as to require prior notice and hearing with reference to extending terms of probation at this time under the concept of "fundamental fairness". This because the facts of this case and those of *Gremminger v. Billings,* 540 S.W.2d 38 (Mo. banc 1976), as well as the facts of the other cases cited in this opinion do not demonstrate that there has been any fundamental unfairness or prejudice in not requiring notice and hearing prior to an order of extension. What is demonstrated by the facts of all of these cases is that, as a practical matter, the judge does not or may not receive the information as to the probationer's conduct until shortly before the initial term of probation expires. The judge is then faced with the alternative of allowing the probation period to expire with consequential discharge of the probationer, or giving a quick notice and holding a quick hearing on revocation and consequent imprisonment, or extending the term of probation. The judge's obligation is to act responsibly in the matter and to do so requires time and thought. Extending the term does not drastically

change the status of the probationer but does provide the necessary time to give the matter due consideration. The judge can discharge the probationer at any time during the extended period. And this court is of the opinion that a judge who has extended a probationer's term without notice and hearing would thereafter afford the probationer a hearing on the matter should it be requested. While we have no empirical data on the matter, we do not accept as a fact that judges in Missouri routinely extend terms of probation without prior advice being given to the probationer directly by the judge or through the probation officer, or that judges routinely refuse to afford the probationer the opportunity to tell his side of the story and secure a discharge if the judge believes him and is otherwise satisfied that discharge is merited.

In the instant case, the order extending the probation term was entered and the probationer was advised of it prior to the expiration of the original term. Petitioner sought no hearing nor any information from the judge as to the reasons for the order. Petitioner accepted the continued probation until it appeared that revocation was imminent which occurred when he was arrested on a probation violation warrant on September 23, 1975.

It is of more than passing significance that Freeman, Cook, Skipworth, and Gaines, the probationers in the cases cited supra, did not consider the extension of probation, when it was ordered, to be prejudicial. At least none of them took any action at that time but only after the extended probation was revoked and they were imprisoned. In the instant case, Ockel and, in the companion case noted supra, Gremminger did not consider the extension orders prejudicial to them when they were entered as neither of them took any action until taken into custody for alleged probation violations.

While there is a potential for prejudice in every system devised by mankind, there has been no showing in the instant case, nor in the cited cases, in this court's opinion, that

prejudice is either a real probability or an actuality which results from the continuation of probation without prior notice and hearing sufficient to justify a mandate that such a notice and hearing be afforded in every case.

The court certainly recognizes that probation stands a better chance of success when the probationer is advised of the reasons why the court proposes to extend his term and gives the probationer as opportunity to state his case and encourages such a practice.

What is stated supra following the court's holding that due process does not require prior notice and hearing for an extension of the probationary term is perhaps dicta. Nevertheless, the court considers it important to state what it believes to be the practical realities of this phase of the overall judicial procedure in criminal causes and deems it advisable to let those views be known in the context of this case.

The writ of habeas corpus previously issued is quashed.

All of the Judges concur.