STATE ex rel. Norman Forrest CARLTON, Relator-Petitioner,

v.

Edward HAYNES, Director, Missouri Department of Corrections, Respondent.

No. 59838.

Supreme Court of Missouri, En Banc.

June 14, 1977.

Petitioner's Motion for Rehearing Denied July 11, 1977.

T. Christopher Graham, Jefferson City, for relator-petitioner.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

DONNELLY, Judge.

Petitioner brought this action seeking a writ of habeas corpus. The writ was ordered issued and counsel was appointed for petitioner. Petitioner is presently in the custody of the Missouri Department of Corrections and confined at the Missouri State Penitentiary in Jefferson City, Missouri.

On July 9, 1970, petitioner pleaded guilty to first degree robbery before Judge James F. Nangle in the Circuit Court of the City of St. Louis. On October 22, 1970, Judge Nangle, *according to the record,* suspended imposition of sentence and petitioner was placed on three years' probation.

On April 3, 1973, Judge Nangle ordered petitioner's probation revoked; however, on April 13, 1973, Judge Nangle ordered the

revocation be "disregarded" and reinstated petitioner's probation for a term which would expire on October 22, 1975, thereby extending the original period of probation by two years.

On February 11, 1974, petitioner was accepted into a "half-way house" known as Archway House in St. Louis, Missouri. Petitioner agreed with his probation officer that he would reside there subject to the rules and regulations of the facility. On or about March 29, 1974, petitioner was granted a week-end furlough from Archway House from which he failed to return. On April 15, 1974, petitioner's probation officer issued a probation violation warrant because petitioner was absent from Archway House without permission. Petitioner returned to Archway House of his own volition on May 20, 1974, but left again on June 23, 1974.

On September 10, 1974, petitioner failed to appear in Circuit Court at his probation revocation hearing. On May 5, 1975, a capias warrant was issued by the Circuit Court for the arrest of the petitioner. Petitioner's probation officer also issued another probation violation warrant for petitioner. On August 6, 1975, petitioner was arrested on several charges, including probation violation. Petitioner was hospitalized subsequent to his arrest and the probation revocation hearing, set for September 12, 1975, was continued because of petitioner's illness.

Eventually, a revocation hearing was held on October 27, 1975, five days after petitioner's probation was to expire under the extension ordered by Judge Nangle on April 3, 1973. Petitioner appeared represented by counsel, at the revocation hearing before Judge Thomas W. Challis. As a result of the evidence presented at the hearing, Judge Challis revoked petitioner's probation for several reasons enumerated in the findings and order of the court. Further, the court ordered that petitioner be brought before the court for imposition of sentence on the charge of first degree robbery to which petitioner entered a plea of guilty on October 22, 1970. On December 1, 1975, the petitioner appeared before Judge Challis who imposed a sentence of ten years imprisonment, suspended execution of the sentence, and placed petitioner on another term of probation for three years.

On March 29, 1976, petitioner was convicted and sentenced on a charge of common assault in the St. Louis Court of Criminal Corrections. Once again execution of sentence was suspended and petitioner was placed on probation. Two days later, a probation violation warrant authorizing the apprehension of the petitioner was issued by his probation officer.

Finally on April 23, 1976, petitioner appeared with counsel once more at a probation revocation hearing before Judge Challis. Petitioner's probation was ordered revoked for the reason that he had been convicted of common assault and had thereby violated the laws of this state which, of course, also constituted a violation of petitioner's conditions of probation. Judge Challis ordered execution of the ten-year sentence he had previously imposed.

The center of controversy in this case involves the statutory construction and interrelationship of §§ 549.071, .101, and .111, RSMo 1969, as amended, which read as follows:

"549.071. Parole and probation may be granted, when—terms, length of—extensions

"1. When any person of previous good character is convicted of any crime and commitment to the state department of correction or other confinement or fine is assessed as the punishment therefor, the court before whom the conviction was had, if satisfied that the defendant, if permitted to go at large, would not again violate the law, may in its discretion, by order of record, suspend the imposition of sentence or may pronounce sentence and suspend the execution thereof and may also place the defendant on probation upon such conditions as the court sees fit to impose. The probation shall be for a specific term which shall be stipulated in the order of record. In the case of a felony offense no probation under this

chapter shall be granted for a term of less than one year, and no probation shall be granted for a term of longer than five years. In the case of a misdemeanor offense no probation shall be granted for a term of longer than two years. The court may extend the term of the probation, but no more than one extension of any probation may be ordered.

"2. The courts, subject to the restrictions herein provided, may, in their discretion, when satisfied that any person against whom a fine has been assessed or a jail sentence imposed, will, if permitted to go at large, not again violate the law, parole the defendant upon such conditions as the court sees fit to impose. Added Laws 1963, p. 671, § A(§ 3), as amended Laws 1967, p. 668, § 1.

"549.101. Arrest of person on probation or parole—revocation of probation or parole—costs—second probation or parole

"1. The court granting probation or parole may at any time before order of discharge without notice to the defendant order his apprehension by the issuance of a warrant for his arrest and his appearance in court forthwith. Any probation or parole officer assigned to or serving the court or judge having jurisdiction may arrest such defendant without a warrant, or may deputize any other officer with power of arrest to do so by giving him a written statement setting forth that the defendant has, in the judgment of the probation officer, violated the conditions of his probation. The written statement delivered with the defendant by the arresting officer to the official in charge of a county jail or other place of detention shall be sufficient warrant for the detention of the defendant. After making an arrest the probation officer shall present to the detaining authorities a similar statement of the circumstances of violation. The court may in its discretion with or without hearing, order the probation or parole revoked and direct that the sentence theretofore imposed be commenced and order execution thereof or in the event imposition of sentence was suspended the court may pronounce sentence and order execution thereof. The court may in its discretion, order the continuance of the probation or parole upon such conditions as the court may prescribe. The court in its discretion may order the allowance in mitigation of the sentence credit for all or for part of the time the defendant was upon probation or parole.

"2. After probation or parole has been revoked, as provided in subsection 1, the court may in its discretion require the payment of all costs in the case and may grant a second probation or parole, but no more than two probations or parole shall be granted the same person under the same judgment of conviction. Laws 1963, p. 671, § A (§ 6), as amended Laws 1965, p. 664, § 1.

"549.111. Absolute discharge of person on probation or parole—citizenship restored—order of discharge to indicate restoration of rights

"1. When a defendant who has been placed upon probation or parole for the term prescribed by the court, and the court granting the probation or parole is satisfied that the reformation of the defendant is complete and that he will not again violate the law, the court shall, by order of record, grant his absolute discharge. When a defendant has completed the term of probation prescribed by the court, if the original order of probation has not been amended, modified, extended or revoked by the court, he shall automatically be absolutely discharged from the probation and from the supervision of the board of probation and parole and the court shall so note by order of record. The order operates as a complete satisfaction of the original judgment by which the fine or jail sentence or commitment to the state department of corrections was imposed or suspended.

"2. Any defendant who receives his final discharge under sections 549.058 to 549.161 shall be restored all the rights and privileges of citizenship. The court granting the final discharge shall supply

the defendant with a copy of the order terminating probation, which shall clearly indicate that all the rights and privileges of citizenship have been restored. The court shall also send a copy of the order of final discharge to the board of probation and parole if the defendant has been under the supervision of the board. Added Laws 1963, p. 671, § A (§ 7), as amended Laws 1967, p. 668, § 1."

Petitioner first contends that the circuit court was without jurisdiction to hold the revocation hearing that took place on October 27, 1975. Petitioner points out that the term of his probation expired on October 22, 1975, five days before the hearing, and since his period of probation had been extended once already by Judge Nangle, on April 13, 1973, it could not be extended again. According to petitioner, by holding the hearing after the date his probation expired, the court in effect granted a second extension of his probation in order to retain its jurisdiction in the matter and such an extension is impermissible under § 549.071.1, which prohibits any court from granting more than one extension of any probation.

The undisputed facts of this case, relevant to this point, show both the issuance of the warrant for petitioner's arrest and his apprehension for probation violation occurred during his probation. Moreover, a hearing had been scheduled before the expiration of the probationary period, but was continued due to petitioner's hospitalization and consequent inability to appear before the court. In order to have prevented petitioner from being "automatically" and "absolutely discharged" by the expiration of his term of probation, as mandated by § 549.-111.1, RSMo 1969, petitioner maintains the trial court could only have summarily revoked his probation prior to its expiration.

While it may be conceded that summary revocation as was employed in *Brandt v. Percich*, 507 S.W.2d 951 (Mo.App.1974), would prevent the court from losing jurisdiction at the conclusion of the period of probation, it is not the sole means by which the court may retain jurisdiction over a probationer, who through no fault of the court or prosecutorial authorities, would have been unavailable or unable to appear at a revocation hearing if such a proceeding had been held before the expiration of the probation period.

Although "we recognize the vital significance of the fixed period of probation to probationers" in terms of creating an expectation of regaining one's liberty, we can envision that "a revocation can occur after the probationary period only if the violation is one that occurred during that period and if formal revocation procedures—usually the issuance of an arrest warrant—are initiated during that period." *United States v. Strada*, 503 F.2d 1081, 1084 (8th Cir. 1974). The jurisdiction of the circuit court attached upon the execution of the warrant by arrest. At that instant the court acquired control of the person of the defendant for the purposes of the revocation proceedings. *State ex rel. Lamar v. Impey*, 283 S.W.2d 480, 483 (Mo. banc 1955). Of course, no unreasonable delay should occur in affording the probationer a hearing. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed. 484 (1972); *Moore v. Stamps*, 507 S.W.2d 939, 950–951 (Mo.App.1974).

In conclusion on this point we find that the issuance of the warrant within a reasonable time after the court learned of the probation violation, and the execution of the warrant within a reasonable time after its issuance, vested the court with jurisdiction over the person of the petitioner, and such jurisdiction was not divested by the postponement for good cause of the revocation hearing until a date after the expiration of petitioner's term of probation, unless the resulting delay was unreasonable and prejudicial to the petitioner. *See, Gagnon*, supra; *Morrissey*, supra. "In any event petitioner is not entitled to relief by reason of . . . any delay in holding the final revocation hearing unless he was prejudiced thereby. And the burden is upon him to make such a showing." *Ewing v. Wyrick*, 535 S.W.2d 443, 445 (Mo. banc

1976). Petitioner made no such demonstration of prejudice.

Secondly, petitioner suggests that there is a conflict between §§ 549.071 and 549.101, RSMo 1969, since § 549.071.1, with reference to *granting* probation, limits the length of any probation to a maximum term of five years and prohibits extending any person's probation more than once. On the other hand, § 549.101 concerns the alternatives available to the court when considering *revocation* of probation. Under § 549.101.2 the court may, after revocation of a person's probation, grant a second probation. Petitioner contends that the legislature intended that under no circumstances should a person serve more than five years' probation for any one judgment of conviction. Furthermore, petitioner argues since § 549.071.1 was enacted in 1967 and § 549.-101.2 was enacted in 1965, the later enactment of § 549.071.1 prevails and by implication repeals § 549.101.2.

■ We believe the two sections are in pari materia and must be harmonized, if this can be done. In *State ex rel. Cairo Bridge Commission v. Mitchell*, 352 Mo. 1136, 1143, 181 S.W.2d 496, 499 (banc 1944), this Court said:

". . . Statutes are in 'pari materia' when they are upon the same matter or subject. 31 C.J., p. 358; and the rule of construction in such instances proceeds upon the supposition that the several statutes relating to one subject were governed by one spirit and policy and were intended to be consistent and harmonious in their several parts and provisions."

■ While it is true that under § 549.-071.1 a person cannot be ordered to serve more than five years on any *one* term of probation, a court may order a person to serve two terms of probation under the authority of § 549.101.2. Thus, a court may lawfully order a person to serve more than five years' probation when, as in the instant case, the court revokes the probation granted after judgment of conviction but before imposition of sentence, and imposes the sentence, but then suspends execution of the sentence and grants a second probation as provided for by § 549.101.2. This procedure followed by Judge Challis on December 1, 1975, fully comported with one of the authorized alternatives available to a judge following revocation of a person's probation and for that reason petitioner is not entitled to discharge under § 549.111.1.

■ Lastly, petitioner maintains that the sentencing procedure in this cause was irregular and excessive. We may not address this contention in an action brought to obtain a writ of habeas corpus since a motion filed pursuant to our Rule 27.26 is the exclusive procedure by which to attack and have corrected or vacated an unlawful sentence. *Wiglesworth v. Wyrick*, 531 S.W.2d 713, 715–716 (Mo. banc 1976).

Accordingly the writ of habeas corpus is quashed and petitioner is remanded to the custody of the respondent.

MORGAN, HENLEY and FINCH, JJ., concur.

BARDGETT, J., concurs in result.

SHANGLER, Special Judge, concurs in result in separate opinion filed.

SEILER, C. J., dubitante by reason of *Smith v. Carnes*, 481 S.W.2d 243 (Mo. banc 1972).

RENDLEN, J., not sitting.

SHANGLER, Special Judge, concurring in result.

The principal opinion finds no cause for discharge of the petitioner on habeas corpus, and on the singular chronology of the events pleaded and proved, I concur. I do not concur, however, that the opinion can serve as precedent for the construction the court gives to §§ 549.071 and 549.101, RSMo 1969, as amended, except under circumstances which antedate *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), and those opinions which have since invested the procedures to alter or revoke a probation already granted with benefits of due process.

The petition for habeas corpus contends that the three year period of probation imposed by Judge Nangle on October 22, 1970, and extended to five years on April 13, 1973, was fully served by October 22, 1975, that the period thereafter until formal revocation on November 21, 1975, was an impermissible second extension of probation under § 549.107.1 and so he was entitled to absolute discharge from custody under § 549.111.1.

The court answers that the issuance of capias and arrest of petitioner were both accomplished before expiration of probation, and that the hearing scheduled within that time was postponed because of the physical disability of petitioner to appear. The court explains that while summary revocation of probation was a method available to preserve jurisdiction over the person of the petitioner, commencement of revocation proceedings by warrant and arrest within a reasonable time after knowledge of the violation—and before expiration of the probation term—accomplished the same purpose. The court goes on to say that, in any event, the burden is on petitioner to show prejudice from delay of the final revocation hearing, a proof not made here.

I all but agree with the response by the court to this first contention. The use of summary revocation of probation as a means to preserve jurisdiction of the court—but not as a substitute for the hearings required for substantive revocation—over a subject who escapes and remains at large does not offend the due process requirements of *Morrissey* and *Gagnon*. A probationer should not be allowed to profit from his abscondence by the claim, after the period of probation has terminated, that the court no longer has jurisdiction over him. *People v. Vickers,* 8 Cal.3d 451, 105 Cal.Rptr. 305, 503 P.2d 1313 (Bank 1972); *Brandt v. Percich,* 507 S.W.2d 951, 957[9] (Mo.App.1974). This discussion of summary revocation is precluded here by the fact

that the delay was occasioned by the probationer and for the benefit of his physical condition. In a word, the petitioner waived the hearing scheduled for within the probationary period and simply cannot be heard to complain that the adjudication of his status was determined after the end of the formal term of probation. *People v. Ham,* 44 Cal.App.3d 288, 118 Cal.Rptr. 591, 595[6] (1975); *People v. Journey,* 58 Cal.App.3d 24, 129 Cal.Rptr. 478, 480 (1976).

I do take issue with the holding of the opinion that in the circumstances presented the burden was on petitioner to show prejudice from the delay in the conduct of revocation hearing. *Ewing v. Wyrick,* 535 S.W.2d 443 (Mo. banc 1976) does not bear on the point to which it is cited by the court because that hearing was eventually held *within the probationary period.* In view of the provision in § 549.111.1 for the *automatic and absolute discharge* of a probationer upon completion of his term, however, where the probation is revoked after the expiration of the designated term, the burden to go forward with evidence that there was legal excuse for the delay falls on the State, not the probationer.

The petition for habeas corpus makes the second contention that § 549.071.1 which provides that no probation for a felony may be granted for a term longer than five years and may be extended only once and § 549.101.2 which purports to allow a second probation for the same conviction are in conflict, and consequently the later enactment which limits probation for a felony to five years repeals the earlier statute by implication and governs. The petitioner contends he has served the full five year term of probation and is entitled to be discharged from custody.[1]

The opinion finds these statutes compatible because although under § 549.071.1 a person cannot be ordered to serve more than five years on any one term of proba-

---

1. It will be recalled that the petitioner has been ordered to serve a total of eight years probation on the first degree robbery conviction: the initial three year term imposed by Judge Nangle on October 22, 1970, the two year extension by Judge Nangle on April 13, 1973, and the three year term of probation imposed by Judge Challis following the October 22, 1975, revocation of probation.

tion, under § 549.101.2 the court may order a person to serve two terms of probation for one conviction, and as a result the second period of probation imposed by Judge Challis was proper under § 549.101.2 following the revocation of the first probation [the total of five years imposed by Judge Nangle]. The opinion sees a difference between an *extension* of probation already granted [§ 549.071.1] and a grant of second probation upon revocation of the first for the same conviction [§ 549.101] and so comes to a view that these statutes permit a term of probation under a conviction for felony which could exceed five years and two enlargements of the probationary term.

Such a construction may have been plausible when these statutes—and their amendments—were enacted, but these statutes have since become suffused with the due process values of *Morrissey* and *Gagnon* and can no longer be understood outside of that matrix; §§ 549.071 and 549.101 were enacted (1963) at a time when the grant or probation and the continuation of that status were within the complete discretion of the trial court. The grant of probation was purely a matter of grace and could be terminated as readily as it was granted. In fact, a defendant accepted probation subject to the condition that the court could revoke that status without further notice. *State v. Collins*, 225 Mo. 633, 125 S.W. 465, 466 (Mo.1910). Nor was it denial of due process to revoke a probation without notice or hearing. *State v. Small*, 386 S.W.2d 379, 382[8] (Mo.1965); *State v. Brantley*, 353 S.W.2d 793, 796 (Mo.1962). Further, revocation of probation was [and remains] not subject to appellate review. § 549.141.

Thus, at the time of these enactments the extension of probation aspect of § 549.071 and the revocation of probation with or without hearing provision of § 549.101 were acceptable procedures.[2] Then came *Morrissey* and *Gagnon* which colored these pro-ceedings with principles of due process. That decision prompted recognition by the Missouri Supreme Court that probation, once given, was a right which could not be taken away without due process, and the court fashioned a remedy by habeas corpus to review the legality of revocation proceedings. *Green v. State*, 494 S.W.2d 356, 357[2–4] (Mo. banc 1973). In this manner, § 549.141, which denies a conventional appeal from revocation of probation has been judicially modified to reflect the impact of *Morrissey* and *Gagnon*.

In *Moore v. Stamps*, 507 S.W.2d 939 (Mo. App.1974), the St. Louis District of the Missouri Court of Appeals undertook to formulate procedures for the revocation of probation to comport with the due process requirements of *Morrissey* and *Gagnon*. That court made parenthetical reference that the language of § 549.101 which allows revocation without hearing was not compatible with *Gagnon*. 507 S.W.2d at 948, n. 4. [The constitutionality of § 549.101 was questioned, but not decided, by the Missouri Supreme Court en banc in *Green v. State*, supra, l.c. 357[5]]. The effect of *Moore v. Stamps*, supra, and those numerous cases which have followed its rationale, is to judicially modify § 549.101 so that a court may not revoke probation without a hearing. These cases do not consider the right of a court on discretion to *extend* probation without comparable hearing and due process procedures.

The response of the principal opinion to the second point is based on the assumption that an *extension* of probation is something different from a *revocation* of probation. It may have been when the statutes were written and as they were written, but no longer. It is the interest of the parolee in his continued liberty which due process surrounds and protects. When probation is offered and accepted as an option to commitment [*Morrissey v. Brewer*, supra, 408 U.S. l.c. 482, 92 S.Ct. l.c. 2601]:

---

2. It is of interest that from 1957 to 1961 there was a Missouri enactment, § 549.254, RSMo 1959, which required that prior to arrest for violation of probation, notice of violation was to be served on the probationer, and after arrest, he was to be brought before the court without unnecessary delay for hearing which could be informal. This statute was repealed by Laws, 1961, p. 338.

[t]he parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions . . . We see, therefore, that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a "grievous loss" on the parolee.

The expectation of regaining this "unqualified liberty" after the conditions of probation have been met and the fixed period of probation has ended are of equally vital significance to the probationer. *United States v. Strada,* 503 F.2d 1081, 1083 (8th Cir. 1974). Thus, an order which *extends* probation without cause is as offensive as one which *revokes* probation without cause. That is to say, a court may no more *extend* a term of probation already fixed without notice, hearing and cause, then to *revoke* it altogether.

When these statutory terms are seen as equivalents, and not of different import in terms of due process requirements, §§ 549.-071.1 and 549.101.2 are understood to mean that only one increment in the probation term under the same judgment may be allowed, whether by extension or by a new probation, and that the total term of probation shall not exceed five years.

I would not apply this suggested rationale to these proceedings, however, because the petitioner does not seek discharge on constitutional grounds. Further, at the time Judge Nangle summarily revoked, reinstated and extended probation [April, 1973], *Gagnon* [effective May 14, 1973] which applied the parole proceedings due process requirements of *Morrissey* to probation had not been decided nor given effect by an appellate court of this state.

I come to this position with awareness of the decision of this court in *Ockel v. Riley,* 541 S.W.2d 535 (Mo. banc 1976). That case posed the broad question [l.c. 541]: "whether the *continuation* or *extension* of probation constitutes such a grievous loss as to constitutionally require prior notice and hearing". The answer of the court was more limited than the question.

Ockel had pleaded guilty to a felony and was placed on probation for a term of three years. Throughout that period of supervision, Ockel was heedless of the conditions of probation, was convicted of petty offenses, kept a gun, and was simply a chronic violator. About two months before the probation term was to have expired, he was arrested on a warrant which charged violation of probation conditions. He admitted the assault which was the subject of the warrant, and that proceeding was withdrawn. In the face of these infractions, some of which apparently there had not been time to evaluate, the trial court—within a month and a half of the expiration of the term—ordered probation extended for another two years. Thereafter, during the extended term, another violation warrant issued, but Ockel was continued on probation.

Ockel brought habeas corpus on the contention that he was entitled to unconditional discharge from custody because he had served the full three year term of probation without revocation, and that the two year extension for that term, without notice or hearing, was unlawful.

It was within this context that *Ockel* concluded [with basic reliance on *Skipworth v. United States,* 508 F.2d 598 (3rd Cir. 1975)] that neither notice nor hearing were required prior to an order to extend the term of probation. As in *Skipworth* —where charges still pended against the probationer when the court acted to extend probation about to expire in five days—and in *Ockel* —where the court acted within weeks of the expiration of the term—there was uncertainty that the court had sufficient reliable information on hand to revoke or discharge before the termination date then imminent. *Ockel* gives this rationale [l.c. 543]:

What is demonstrated by the facts of all of these cases is that, as a practical matter, the judge does not or may not receive the information as to the probationer's conduct until shortly before the initial term of probation expires. The judge is then faced with the alternative of allowing the probation period to expire with

consequential discharge of the probationer, or giving a quick hearing on revocation and consequent imprisonment, or extending the term of probation. The judge's obligation is to act responsibly in the matter and to do so requires time and thought. Extending the term does not drastically change the status of the probationer but does provide the necessary time to give the matter due consideration.

This postulate I understand to fall within the dictum of the principal opinion—with which I agree—that when exigent circumstances compel, a court may by summary order preserve jurisdiction over a probationer which would otherwise be lost by expiration of the probation term.[3]

In whatever terms *Ockel* must be understood, however, by its own rationale it has no application to the extension ordered by Judge Nangle six months before expiration, prompted neither by infraction, misconduct, nor by reason of impending termination. On its face the judicial act was arbitrary. A convict who accepts terms of probation understands that if those conditions are met uneventfully for the period imposed, he will then be a free man. *Sanford v. King,* 136 F.2d 106, 108[4, 5] (5th Cir. 1943). The right to unhindered movement, consort and occupation are the nurture of a free society. To extend probation for any significant period is to impair these rights and inflicts a grievous personal loss. *Morrissey, supra,* l.c. 482. To do so without legal cause is to break faith with the principles of due process.

I would insist, then, that except for the unusual circumstance when summary continuation of probation is necessary to allow time to determine whether there is cause for revocation—which a court in any event may do even without express authority of statute—the *extension* of probation under

§ 549.071.1 and the *revocation* and grant of a second probation under § 549.101.2 are equivalent in terms of due process, so that the grant of either under one judgment of conviction is all that our law allows.

For these reasons, I concur in the result of the principal opinion.

---

**3.** *Skipworth* makes it clear, however, that an ex parte extension of probation for any significant period is prejudicial [l.c. 602[8]]:

. . . [B]ecause of the potential for prejudice in such extensions, we are in agreement with the district court in *Freeman* [*U. S. v. Freeman,* D.C., 160 F.Supp. 532] [also relied

on by *Ockel* ] that they are inadvisable. *Accordingly, we will hereafter require district courts in this Circuit before extending probation to provide notice to the probationer of the proposed extension should he so desire, together with the assistance of counsel.* [Latter emphasis added.]